# Cook, *et al. v.* Atkins.

*Bill to Enforce Vendor's Lien.*

(Decided June 29, 1911.　56 South. 224.)

1. *Vendor and Purchaser; Lien; Waiver.*—The receipt of payments of interest by a vendor on a purchase money note from an heir of the vendee would not be the acceptance of an independent security from such heir so as to waive the vendor's lien.

2. *Same; Suit to Establish; Decree.*—The fact that the bill so vaguely described a small part of the land that a decree with respect thereto could not be made, would not prevent the granting of relief since the final decree could provide for the rights of the parties with respect thereto.

3. *Same; Right to Lien.*—In the absence of satisfactory evidence of a purpose to exclude it equity raises a vendor's lien by implica-

tion, and the formal acknowledgment in the deed of the receipt of the consideration for the conveyance would not prevent the grantor from claiming the existence of a vendor's lien if the price was not in fact paid.

4. *Same; Action to Establish; Burden of Proof.*—In the enforcement of a vendor's lien, where the purchase price has not been paid, the burden rests on the resisting vendee to show that a lien was intentionally waived or relinquished by the parties; the lien attaching if doubtful.

5. *Same; Collateral Security.*—The recital in a purchase money note that it was given to secure the purchase price evidenced the intention of the parties to retain a vendor's lien.

6. *Same.*—An agreement by the vendee that if he could not pay the principal he would pay the interest, and deliver up the land to the lawful holder of the purchase money notes, was not a collateral security in such sense as to waive the vendor's lien, being a mere option of discharging the principal of the debt by reconveying the land.

7. *Same; Limitation.*—An action to enforce a vendor's lien against the personal representative of the vendee was barred where brought forty years after the accrual of the lien and the death of the vendee.

8. *Appeal and Error; Assignment; Joint.*—Where error is jointly assigned injury must be shown to all parties joining in the assignment to sustain it.

9. *Limitation of Action; Suspension of Statute; Payment.*—If an heir of the vendee acted as agent for the other heirs in making payment of interest on the purchase money note, his payment operated to toll the statute as to all of them.

10. *Same; Payment of Interest.*—As analagous to the rule in case of a mortgage lien where heirs of a vendee who inherited the land subject to a purchase money lien paid interest on the purchase money notes before an action to establish the lien was barred, they acknowledged the debt as a lien, and the lien was continued by such payment for twenty years thereafter. (Section 4850, Code 1907.)

11. *Executors and Administrators; Vendors' Lien; Action to Enforce; Parties.*—Where a debt had long been barred so that a deficiency decree could not be rendered, the personal representative of a deceased vendee is not a necessary party to a bill against the heirs to enforce a vendor's lien.

APPEAL from Cherokee Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Fanny Atkins, against James A. Cook and others, to enforce a vendor's lien. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

MCCONNELL & CONNER, for appellant. Under the conveyance the lien of Atkins on the lands in controversy

[Cook, et al. v. Atkins.]

could be but a mere creation of equity.—*Hester v. Hunnicutt*, 104 Ala. 282; *Sykes v. Betts*, 87 Ala. 537. The unambiguous consideration recited in the deed is as between the parties prima facie correct.—*Hall v. Loveman*, 85 Ala. 284. The provisions in the note constituted a collateral security.—*Tedder v. Steele*, 70 Ala. 351; *Foster v. Trustees*, 3 Ala. 302. The right was barred by laches and limitation.—*Watts v. Burnett*, 56 Ala. 344; *Espy v. Comer*, 76 Ala. 505; 27 Ala. 411; 108 Ala. 527. The personal representative was a necessary party.—*Moore v. Alexander*, 81 Ala. 509; *Dooley v. Villalonga*, 61 Ala. 129; *Bell v. Hall*, 76 Ala. 546; *Smith v. Murphy*, 58 Ala. 630. The bill was vague and indefinite as to the description of the land.—*Page v. Bradford*, 100 Ala. 610; 86 Ala. 611. Neither James Cook nor any other heir could make any payment on the note nor obligate themselves in writing so as to prevent the bar of the statute of limitations.—Sec. 4850, Code 1907; *Warren v. Hearn*, 82 Ala. 556; *Stark v. Wilson*, 65 Ala. 580; 67 Ala. 146. It was essential to the equity of the bill that the pleader aver with definiteness, the time of Cook's death and the payments made by him.—*Shields v. Sheffield*, 79 Ala. 91; *Goldsby v. Goldsby*, 67 Ala. 563; *Cockrell v. Gurley*, 26 Ala. 405.

BLACKWELL & AGEE, for appellee. Complainants had a lien enforceable in equity.—*Chapman v. Peebles*, 84 Ala. 283; *Thomason v. Cooper*, 57 Ala. 560. Cook not having reconveyed or offered to reconvey the land when the note was due, became absolutely liable for the amount of the note.—35 Cyc. 253. By the payment the doctrine of laches and the statute of limitations was tolled.—*Reynolds v. Lawrence*, 147 Ala. 216; *Phillips v. Adams*, 78 Ala. 227; *Hughes v. Thomas*, 11 L. R. A. (N. S.) 744; *Lisle v. Esser*, 73 N. W. 1008; *Taylor v.*

*Perry,* 48 Ala. 240; 25 Cyc. 1373; 13 A. & E. Enc. of Law, 794. The personal representative was not a necessary party, as the debt was barred, and no deficiency judgment could be rendered.—*Boyle v. Williams,* 72 Ala. 353; *Eslava v. N. Y. N. B. & L. Assn.,* 121 Ala. 480; *Chapman v. Peebles, supra; McCall v. McCurdy,* 69 Ala. 65.

SAYRE. J.—The bill in this case is filed by appellee against the heirs at law of William C. Cook, deceased, and seeks the enforcement of an alleged vendor's lien. The facts shown by the amended bill are as follows: In 1865, David Atkins sold and conveyed to William C. Cook a certain tract of land in Cherokee county. The purchase money was secured by a note in words and figures as follows: "$3,000. On or before the first day of January, 1866, I promise to pay to David Atkins, or order, three thousand dollars ($3,000.00) in gold, for certain parcels of land lying in Cherokee county, which I have this day purchased of him, known as the Solomon and Robert McGhee places, containing three hundred (300) acres more or less. The interest of the above amount, I promise to pay annually in the paper currency of the country, but if that currency is at a greater discount than fifty per cent. (50 per cent), I promise to pay an amount greater in proportion to that discount. I also promise that if I find that I cannot pay the principal of the note, I will pay up the interest and deliver the land up again to the lawful holder of this note. Witness my hand and seal, the 25th day of September, 1865. [Signed] William C. Cook. [Seal.]" Cook died in the year 1867, leaving as his heirs children, the survivors of whom, and the children and heirs at law of others who have died in the meantime, are made parties defendant to the bill. After the death of Cook,

his son, James H. Cook, paid interest on the debt secured by the note. These payments, made at intervals of one and two years and averaging about $240 a year, cover the period from Cook's death to the year 1910, when this bill was filed. The averment is that they were made for and on account of the heirs at law of William C. Cook. Complainant claims in virtue of her ownership of the note and all rights accruing therefrom, bequeathed to her by the last will and testament of her deceased husband, David Atkins.

Questions of controlling importance are: Whether a lien was reserved; whether, if there was a lien, it has been lost by laches or the statute of limitations; and whether the presence of a personal representative of William C. Cook is necessary to a proper disposition of the cause. It is suggested that the receipt of interest payments from James H. Cook may have constituted the acceptance of independent security; but it seems obvious that there is no merit in the suggestion, and we will not refer to it again. It is also said that the land is not accurately described. We are unable to find that this point was taken by the demurrer. But if, as the brief seems to assert, some small part of the land is so vaguely described that no decree in respect to it can be safely made that is a matter which does not affect the equity of the bill, and will be properly cared for in the event a final decree is rendered for complainant.

Was there a lien? The formal acknowledgment in the deed of the receipt of the consideration for the conveyance does not conclude the grantor or those claiming under him, if in fact the purchase price remains unpaid.—*Bankhead v. Owen,* 60 Ala. 457; *Wilkinson v. May,* 69 Ala. 33. Equity raises the lien by implication, unless there is satisfactory evidence of a purpose to exclude it, and the vendee who resists its enforcement as-

sumes the burden of showing that it has been intention-
ally displaced or waived by the consent of parties. If
the question remains in doubt, the lien attaches.—*Wil-
kinson v. May, supra.* The recital of the note that it
was given to secure the purchase money of the land evi-
denced the intention of the parties that a vendor's lien
was retained, even though it showed a collateral security
in some sort, in that the vendee promised that, if he
could not pay the principal, he would pay the interest
and deliver up the land to the lawful holder of the note.
—*Tedder v. Steele,* 70 Ala. 347; *Hood v. Hammond,* 128
Ala. 569, 30 South. 540, 86 Am. St. Rep. 159. This
promise did not provide for that contingency in which
the vendee might be able, but unwilling, to pay. It was
in truth no security to the complainant or her assignor,
but an option by which the promisor reserved the privi-
lege of discharging the principal of the debt by a recon-
veyance of the land. We conclude that there was a
lien.

It does not appear that defendant's position in oppo-
sition to the asserted lien has suffered impairment or
embarrassment in any respect by mere delay. So, then,
the imputation of laches to complainant by the demur-
rer must find support in the general policy of repose
which the law adopts without reference to the hardships
or difficulties of individual cases, and must be measured
by the legislative declaration of that policy to be found
in the statute of limitations. At the time of filing the
bill, more than 40 years had passed since the accrual of
the lien and the death of the vendee. If the case for a
lien stood upon the original transaction, without more,
there could be no question but that the lien had been lost
long before this suit was commenced. What effect, then,
is to be assigned to the continuous payments of interest
by the heirs during this period? This question must be

[Cook, et al. v. Atkins.]

answered in the shape in which it is presented by the record. All the defendants demurred jointly and separately. But the defendants, other than James H. Cook, for themselves advanced a ground of demurrer which asserts a difference in their position and that of James H. in respect to the effect of payments made by him upon the running of the statute of limitations. James H. could, of course, take nothing by that ground of objection to the bill. If there was error in overruling this ground of demurrer, it was not error of which James H. could complain. The appeal is taken jointly by all the defendants. There has been no severance in the assignments. The joint assignments attack the decree as to all the defendants. It is a perfectly familiar rule in this court that, where error is jointly assigned, injury must be shown to all joining in the assignment, or an affirmance must follow.—*Lehman v. Gunn,* 154 Ala. 369, 45 South. 620, and the authorities there cited. Counsel for appellants, speaking at this point for the defendants, other than James H. Cook, as we assume, seem to say that in making payments of interest James H. was a volunteer, so far as concerns the other heirs, and that their rights under the statute of limitations are not to be prejudiced thereby. But, as has been heretofore noted, the averment of the bill is that these payments were made by James H. Cook for and on account of the heirs at law of William C. Cook. We have taken this to mean that James H. was acting as the agent of the other heirs by the appointment in fact, express or implied. In that case, it would be clear that his payments operated upon the interest of all of them alike.—*Murdock v. Waterman,* 145 N. Y. 55, 39 N. E. 829, 27 L. R. A. 418. But, if the intention was to assert the proposition of law that James H. Cook was the agent of the other heirs by reason of the mere fact that

he and they were coheirs, a question of some difficulty, it may be, would be presented. We have thought it well to pretermit decision of this question, because, for reasons indicated above none of the appellants could take anything by its determination in their favor, because the argument on this point scarcely amounts to more than a suggestion on either side, and because, under the unusual circumstances shown by the bill, we suppose it to be hardly probable that the solution of the question will depend upon the bare fact that the defendants became coheirs more than 40 years ago.

The debt on which the heirs made payments of interest was not their debt, but that of their ancestor. That a suit against the personal representative of the deceased vendee on the debt, under the conditions here shown was barred long before this bill was filed is admitted, and is beyond controversy.—*Starke v. Wilson,* 65 Ala. 576; *Lewis v. Ford,* 67 Ala. 143; *Warren v. Hearne,* 82 Ala. 554, 2 South. 491. These cases show that in the absence of a specific lien complainant would be remediless. They show nothing in respect to the survival of the lien. The statutory period of limitation of an action on a vendor's lien differs from that provided for the bar of an action on the debt, so that, if these periods run uninterruptedly to a conclusion, the remedy on the lien long outlives the remedy on the debt. In the case of a mortgage lien, it is stated in Jones on Mortgages to be the universally recognized rule that a payment of interest or part of the principal renews the mortgage, so that an action may be brought to enforce it within 20 years or other period of limitation after such last payment. Code § 1198. The rule stated has been recognized in this court.—*Phillips v. Adams,* 78 Ala. 225. These authorities afford a strict analogy for complainant's case, except for the fact that payments in her

case were made, not by the debtor, but by his heirs. But the heirs inherited the property, subject to the lien. They became, in this way and to the extent of the value of the property, payors of the debt, and their payments of interest from time to time before the bar was complete can be construed only as acknowledgments of the debt as a lien—as evidence of a continuing liability within the clear intendment of the statute, which provides that a partial payment, made upon a contract by the party sought to be charged, before the bar is complete, is evidence of a new and continuing contract. Code § 4850. We hold, therefore, that the payments shown in this case operated to continue the lien for 20 years thereafter as against the land in the possession and ownership of the heirs.—*Murdock v. Waterman*, supra.

The debt having been long since barred, and, no deficiency judgment being sought or possible, there is no reason why the personal estate of the deceased vendee should be represented in this litigation. The reasons stated in *Moore v. Alexander*, 81 Ala. 509, 8 South, 199, *Dooley v. Villalonga*, 61 Ala. 129, and that line of cases, why the personal representative should be made a party, to wit, that the personal estate was interested in the ascertainment of the amount of the debt, fails in this case.

The decree of the chancellor overruling the demurrer to complainant's bill was free from error, and will be affirmed.

Affirmed.

SIMPSON, ANDERSON, and SOMERVILLE, JJ., concur.