210 So.2d 679

**C. B. CLUTTS et al.**

**v.**

**JEFFERSON COUNTY BOARD OF ZONING ADJUSTMENT et al.**

**C. B. CLUTTS et al.**

**v.**

**Katherine C. COX et al.**

**6 Div. 541, 545, 545–A.**

Supreme Court of Alabama.

May 13, 1968.

Dominick, Fletcher & Yielding and Corretti, Newsom & Rogers, Birmingham, for appellants.

Speir, Robertson & Jackson, Lange, Simpson, Robinson & Somerville and James, Beavers & Harrison, Birmingham, for appellees and intervenors.

Maurice F. Bishop, Birmingham, for appellee Norris.

MacDonald Gallion, Atty. Gen., for the State.

Wm. A. Thompson, Birmingham and Drayton Hamilton, Montgomery, for City of Birmingham and Alabama League of Municipalities, amici curiae.

COLEMAN, Justice.

These appeals are táken from a judgment and a decree which were rendered by the circuit court in proceedings wherein the parties contest the right of certain landowners to use a lot for construction and operation of a service station for motor vehicles.

The landowners were successful in the trial courts and, by the judgment and the decree, obtained the right to use their land for a service station. The owners of adjacent or neighboring land have appealed to this court in both cases. The landowners and certain intervenors have cross-assigned errors in one case. The appeals have been consolidated.

The land in question is a lot which is located within five hundred feet of a limited access highway, Interstate Highway I-65 in Jefferson County, and at or near an entrance to or exit from that highway.

On the appeals, the question for decision is whether Act No. 599, enacted in 1967, is a valid and constitutional act. On the cross-assignments, the question is whether the court erred in discharging, instead of dissolving, a temporary injunction.

The appeal in 6 Div. 541 is from a judgment dismissing an appeal which had been taken to the circuit court, at law, from an

order or ruling of the Board of Zoning Adjustment of Jefferson County.

The appeal in 6 Div. 545, and the cross-assignments in 6 Div. 545–A, are from a decree, in equity, declaring that Act No. 599 is valid and constitutional and "discharging" a temporary injunction which enjoined issuance of a building permit to the landowners.

### 6 Div. 541

This case began with an application by the landowners to the Jefferson County Planning and Zoning Commission to re-zone their land so as to permit its use for construction and operation of a service station for motor vehicles.

The Planning and Zoning Commission approved the application, but the Jefferson County Commission disapproved and denied the application.

The owners of the land then requested the Board of Zoning Adjustment of Jefferson County to grant a variance from the Zoning Regulations and to cause a permit to be issued for a special exception so as to permit a service station to be constructed and operated on the land. The Board of Zoning Adjustment, by a majority vote, approved the request for a variance.

Certain aggrieved owners of neighboring property, who object to use of the land for a service station, appealed to the circuit court, alleging, among other things, that the Board of Zoning Adjustment erred in granting the variance.

The landowners and the Board of Zoning Adjustment filed a motion to dismiss the appeal which neighboring property owners had taken to the circuit court. The motion to dismiss, as finally amended, asserts that the land in question is within five hundred feet from the right-of-way for Interstate Highway I-65 and its intersection with Alford Avenue in Jefferson County, and that, by virtue of Act No. 599, of the 1967 Regular Session of the Legislature, any prior legal restrictions against constructing and operating a service station on the land have been removed, and, therefore, the question presented on the appeal to the circuit court has become moot.

The statute in question originated in 1956.[1]

The statute was amended in 1961 by Act No. 305, 1961 Acts, Vol. II, page 2365. The title of Act No. 305 recites:

### "AN ACT

"To amend an Act approved February 10, 1956, entitled 'An Act to authorize and provide for the planning, designation, establishment, use, regulation, alteration,

---

1. The title and Section 4 of original Act No. 104, of 1956, recite as follows:

"AN ACT

"To authorize and provide for the planning, designation, establishment, use, regulation, alteration, improvement, maintenance, and vacation of controlled access facilities; defining such terms; providing for the acquisition of lands required therefor; the restriction of intersections and control of approaches; the establishment of local service roads; the prohibition of certain acts thereon and provision for penalties therefor; and for other purposes.

". . . . . . . . .

"Section 4. Highway authorities; extent of power of: Right of Ingress to or egress from. Be It Further Enacted, That

the State Highway Director is authorized to so design any controlled access facility and to so regulate, restrict, or prohibit access as to best serve the traffic for which such facility is intended. In this connection such highway authority is authorized to divide and separate any controlled access facility into separate roadways by the construction of raised curbings, central dividing sections, or other physical separations or by designating such separate roadways by signs, markers, stripes, and the proper lane for such traffic by appropriate signs, markers, stripes, and other devices. No person shall have any right of ingress or egress to, from or across controlled access facilities to or from abutting lands, except at such designated points at which

improvement, maintenance, and vacation of controlled access facilities; defining such terms; providing for the acquisition of lands required therefor; the restriction of intersections and control of approaches; the establishment of local service roads; the prohibition of certain acts thereon and provision for penalties therefor; and for other purposes' (Act No. 104, H.B. 148, Acts 1956, p. 148)."

Act No. 305 added to Section 4 of Act No. 104, the following language:

" 'Except to the extent authorized by law for toll roads, no automotive service station or other commercial establishment for serving motor vehicle users shall be constructed or located within the right-of way of, or on publicly-owned or publicly-leased land acquired or used for or in connection with a controlled access facility. However, this shall not limit the powers granted to the Department of Conservation by Chapter 3 of Title 8 of the Code of Alabama of 1940, as amended, when those powers are exercised in accordance with the purposes of such chapter.' "

Act No. 599, 1967 Acts, Vol. II, page 1384, which is relied on by the landowners in the instant case, was approved September 8, 1967. Its title recites as follows:

### "AN ACT

"To amend Sections 4 and 5 of Act No. 104, H.B. 148, First Special Session 1956 (Acts 1956, p. 148), an act authorizing and providing for the planning, designation, establishment, use, and regulation of controlled access highways."

Act No. 599 further amended Section 4 of Act No. 104 by adding to Section 4, as amended by Act No. 305 of 1961, the following sentence:

"And provided further, that notwithstanding any other laws to the contrary

any owner or owners of lots, tracts, or parcels of land lying within 500 feet from any acquired right of way for such controlled access facility at any point of access to or exit from such facility may use, improve or develop such property for automotive service stations or other commercial establishments, including places for serving food and providing lodging, for serving motor vehicle users."

The validity of the sentence added by Act No. 599 is called into question in the instant case. If the 1967 amendment is a valid and binding enactment of the Legislature, then the landowners have the lawful right to use the land in question for operation of a service station for serving motor vehicle users, and rezoning and permission from the zoning authorities of Jefferson County are not required. On the other hand, if the amendment by Act No. 599 was enacted in violation of the Constitution and, therefore, is not valid and not binding, then the landowners are controlled in the use of their land by applicable zoning laws and ordinances and cannot lawfully use their land for a service station without rezoning or a variance authorized by appropriate authority.

On the hearing of the motion to dismiss, the neighboring property owners contended that Act No. 599 is unconstitutional. The circuit court ruled to the contrary, upheld the validity of the act, and dismissed the appeal to that court. From that judgment, the neighboring property owners have appealed to this court, and assign for error that the trial court erred in dismissing the appeal and in holding Act No. 599 constitutional.

*6 Div. 545*

The complainants, who are the aggrieved owners of property adjacent to the lot which the landowners desire to use for a service station, filed their bill praying for a permanent injunction enjoining is-

---

access may be permitted or service roads provided, upon such terms and conditions as may be specified from time to

time." Acts of Alabama, Special Sessions, 1956 Vol. 1, page 148.

suance of a building permit for a gasoline service station on the land in suit, and praying for a declaration that Act No. 599 violates Section 45 of the Constitution of 1901. On application, a judge of the circuit court, in equity, issued a temporary injunction.

After a hearing of testimony ore tenus, the cause was submitted on verified bill of complaint, sworn answers, stipulation, and testimony of certain witnesses.

In final decree, the court held Act No. 599 constitutional, denied relief to complainants, dismissed their bill of complaint, and "discharged" the temporary injunction.

Complainants have appealed and assign as error the action of the court in upholding Act No. 599 and dismissing their bill of complaint.

### 1.

■ Appellees assert that some of the assignments of error are insufficient, and we agree that they are. Appellees say that, because appellants argue all assignments in bulk and some are insufficient, none of the assignments should be considered.

The rule relied on by appellees applies to bulk argument of unrelated assignments, but not to bulk argument of related assignments. We have recently discussed this rule in Stapleton v. Stapleton, 282 Ala. 62, 209 So.2d 202, March 14, 1968. Being of opinion that all the assignments relate to a single issue and must stand or fall on a single proposition of law, to wit, that Act No. 599 violates Section 45 of the Constitution of 1901, we will consider those assignments which sufficiently raise this issue.

### 2.

■ Appellees say that two of appellants, Ward and McConnell, have not been injured by the judgment and decree appealed from; and that, because the assignments are joint as to all appellants, and the error is harmless as to these two, the judgment

and decree must be affirmed, citing Voltz v. Childers, 253 Ala. 369, 44 So.2d 604, where this court held that, where several appellants had jointly assigned errors without obtaining leave for severance, and it clearly appeared that one appellant was in no way injuriously affected by any of the rulings assigned for error, the decree would be affirmed because, under the well-established rule of review, this court is restricted to a consideration of alleged errors that affect the rights of *all* the appellants.

The appellees say that Ward and McConnell have suffered no injury by the errors complained of because, subsequent to the appeal in 6 Div. 541, they executed options to sell their property to oil companies.

In Voltz v. Childers, supra, the question at issue was title to eighty acres of land. To the bill of complaint, one respondent, R. C. Daniel, had filed a separate answer disclaiming all right, title, or interest in the land. After an adverse decree, *all* respondents appealed, without leave of severance in the assignments of error. Clearly, a party, who disclaimed all interest in the land, sustained no injury by a decree declaring that he did not have that which he had already disavowed by his formal pleading.

In the instant case, appellants Ward and McConnell have filed no disclaimer. The parties stipulated "that *all* of the complainants" (which included Ward and McConnell), "if called to the witness stand, would testify that construction and operation and maintenance of gasoline service stations . . . . on the subject property . . . . would irreparably injure and damage the complainants' property."

On the hearing in 6 Div. 545, Ward and McConnell both testified that they were still complainants in the case. McConnell testified that if the service station were built and operated, it would adversely affect the sale of his property for residential purposes. Ward testified that he paid part of the attorney's fees in the case.

There was no formal disclaimer by either Ward or McConnell. In their testimony, both maintained their position as complainants. On this record, we do not think we can say, as a matter of law, that either Ward or McConnell is not injuriously affected by the error complained of. At the most, evidence that they had executed options to sell to an oil company would go to discredit their testimony that the proposed filling station would injuriously affect their property.

We hold that the rule applied in Voltz v. Childers, supra, does not apply here.

### 3.

As was observed by the learned trial court in 6 Div. 545, the basic issue presented by the pleadings is whether or not Act No. 599, as passed by the Legislature of 1967, is constitutional.

Appellants contend that Act No. 599 does not meet the requirements of Section 45 of the Constitution of 1901 that: " . . . . . Each law shall contain but one subject, which shall be clearly expressed in its title, except . . . . " certain enumerated classes of bills. Act No. 599 does not fall within the exception.

Probably hundreds of decisions have been written construing this provision of the Constitution. "It has been often said in this court, repeating the words of other courts, that this clause of the constitution is intended to accomplish but one purpose, the suppression of a practice which had been too prevalent, leading at times to unfortunate, if not corrupt legislation, by which several projects or subjects, having no proper relation to each other, were combined in one bill, and the supporters of each *assisted* in passing all into law; or, *clauses were inserted, of which the title gave no intimation* (Emphasis Supplied); and the prevention of the deception of the legislature, and the people, by concealing under alluring titles legislation which, if its real character had been disclosed, would have been condemned." Montgomery Mu-

tual Building and Loan Association v. Robinson, 69 Ala. 413, 416, 417.

"The unity of subject is an indispensable element of legislative acts; but it is not the only element; the subject must be 'clearly expressed in its title.' . . . . 'The title must be such, at least, as fairly to support or give a clew to the subject dealt with in the act, and, unless it comes up to this standard, it falls below the constitutional requirement.' " Lindsay v. United States Savings & Loan Association, 120 Ala. 156, 173, 24 So. 171, 176, 42 L.R.A. 783.

"Again it is said the test is: Is there anything in the bill which cannot by fair construction be referred to the title? Or (as stated in another form by this court): 'The question must be whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title.' " Ham v. State ex rel. Buck, 156 Ala. 645, 655, 47 So. 126, 130.

■ The rule is that the title of an act, which purports merely to amend a certain section of the Code, cannot, conformably with Section 45, add a new and different subject. Taylor v. Johnson, 265 Ala. 541, 543, 93 So.2d 143.

■ An amendment by reference to the number of a section in an act must be confined to matters which are germane to, *suggested by*, and supplemental to the subject of that section; otherwise it cannot be said that the subject of the amendatory act is expressed in its title as required by Section 45 of the Constitution. Ex parte Cowert, 92 Ala. 94, 100, 9 So. 225; Ex parte Reynolds, 87 Ala. 138, 6 So. 335.

The title of Act No. 104 describes the act as one to authorize and provide for the establishment and regulation of "controlled access facilities," "the acquisition of lands required therefor"; the "control of approaches"; and the "establishment of local service roads."

Section 2(b) of Act No. 104 defines a "controlled access facility" as a "highway or street included in the National System of Interstate Highways especially designed for through traffic. . . .."

The lot which the owners wish to use for a service station is not part of any street or highway, is not land acquired therefor, and is not part of an approach to any street or highway. The lot in suit is outside of any highway or street.

■ The term "approaches," has been defined as an access or a way, passage, or avenue by which a place may be approached. State ex rel. Washington Toll Bridge Authority v. Yelle, 197 Wash. 110, 117, 84 P.2d 688. Another definition is that the approaches to a bridge comprise the necessary traffic arteries and adjustments thereof, to develop its maximum traffic capacity. State ex rel. Schaefer v. Zangerle, 43 Ohio App. 30, 35, 182 N.E. 644. In *Zangerle*, the court quotes from Webster's New International Dictionary that an approach is " 'a way, passage, or avenue by which a place or building can be approached; an access.' " As used in the title of Act No. 104, an approach is a way, passage, avenue, street, or road by which traffic may approach a limited access facility. We do not think that the term can reasonably be understood to include land which is outside of such a way, passage, avenue, or street.

The title of Act No. 104 gives notice that regulation and control of the limited access highway is provided for, but nothing in the title gives any notice or any clew that the act provides for regulation or control of the use of any land that is not part of the facility or of some street or highway.

If the title gives notice that the act will regulate or control the use of land adjacent to the limited access highway, then the title must be construed as giving notice that the act will prohibit the use of adjacent land for certain purposes. If the title gives notice that the act may confer on adjacent land the privilege of using that land for any purpose, then the title also gives notice that the act prohibits the use of adjacent land for any purpose. We do not think that one reading the title could reasonably infer that the act provides for either granting or taking away any right to use the adjacent land for any purpose.

The title of the act clearly provides for regulation and control of the use of the limited access facility, but the title is silent with respect to regulation or control of the use of adjacent land outside the facility.

We conclude that the amendment attempted by Act No. 599 contains a subject which is not clearly expressed in its title. For that reason, we hold that the amendment of Section 4 of Act No. 104, which is attempted by Act No. 599, does not conform to Section 45 of the Constitution and is, therefore, void.

It follows that the judgment and the decree appealed from must be reversed and the causes remanded for further proceedings consistent with this opinion.

*6 Div. 545–A*

The court "discharged" the temporary injunction. The distinction between discharging and dissolving an injunction is discussed in Woodward v. State, 173 Ala. 7, 55 So. 506, and Patton v. Robison, 253 Ala. 248, 44 So.2d 254. We do not understand that any of the parties contends that the record shows any irregularities in the mode of granting or issuing the writ, or, that the writ was "improvidently" granted, as those terms are used in the law pertaining to injunctions.

■ In any event, since the basis for vacating the injunction appears to have been the holding that the amendment to Section 4 of Act No. 104, attempted by Act No. 599, was valid, and we hold that this

amendment was invalid, the decree "discharging" the injunction is due to be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL, and HARWOOD, JJ., concur.